## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KRYSTAL BRYANT**,                                    Case No.
                                                       Hon.

        Plaintiff,

v

**OMNI HEALTHCARE MANAGEMENT CORP.**,
**OMNI HOME CARE, INC.**,
**OMNI HOME CARE OF OHIO, INC.**,
**SWARUP SAHA**, and **RESHMI SAHA**,
Jointly and Severally,

        Defendants.

---

**MILLER COHEN, P.L.C.**
Richard G. Mack Jr. (P58657)
Adam M. Taub (P78334)
*Attorneys for Plaintiff*
600 W. Lafayette Blvd., 4th Floor
Detroit, MI 48226
(313) 964-4454

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

        There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Compliant.

    **NOW COMES** Plaintiff, **KRYSTAL BRYANT**, by and through her attorneys, **MILLER COHEN, P.L.C.**, and for her Complaint against Defendants, **OMNI HEALTHCARE MANAGEMENT CORP.**, **OMNI HOME CARE, INC.**, **OMNI HOME CARE OF OHIO, INC.**, **SWARUP SAHA**, and **RESHMI SAHA**, states as follows:

# INTRODUCTION

This is an action for wrongful termination brought by Plaintiff, Krystal Bryant, against Defendants Omni Healthcare management Corp., Omni Home Care, Inc., Omni Home Care of Ohio, Inc. (collectively referred to as "Omni"), Swarup Saha, and Reshmi Saha. Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*, by failing to pay its workers overtime pay and by making impermissible deductions from the pay of salaried workers. When Ms. Bryant raised concerns over these issues, she was terminated in retaliation for exercising her rights under the FLSA.

Due to Defendants' conduct, Ms. Bryant also suffered for severe emotional distress, leading her doctor to place her on a stress leave. Defendants interfered with Ms. Bryant's ability to take leave under the Family and Medical Leave Act ("FMLA") and retaliated against her when she took the leave she was legally entitled to by terminating her while she was on medical leave. Additionally, Defendants retaliated against Ms. Bryant for reporting a work-related injury under the Michigan Workers' Disability Compensation Act ("WDCA") by terminating her employment shortly after she made her report. Finally, Defendants denied Ms. Bryant pay for her final weeks of work and denied her health care insurance coverage under the Michigan Wage and Fringe Benefits Act ("WFBA").

Ms. Bryant began working for Defendants in or about December 2013 as a Quality Assurance Nurse. In or about October 2015, she was promoted to the Director of Nursing and Director of Clinical Operations. Beginning in or about May 2015, Ms. Bryant began performing work from home on a piece-meal basis in addition to her salaried position. As a result, Ms. Bryant received two pay checks: one for her salaried work and one for her piece-meal work, both reported on a W-2 and paid through payroll. In or about January 2016, Defendants unilaterally began classifying Ms. Bryant as an independent contractor for her piece-meal work from home, reporting the income on a 1099. Ms. Bryant immediately contacted Swarup Saha, owner of Defendants Omni Healthcare Management Corp., Omni Home Care, Inc., and Omni Home Care of Ohio, Inc. She also notified Defendants' Administrative Director of Operations, Heather Perez. She objected to being classified as an independent contractor, and at the same time, she also raised concerns about not being paid her full salary whenever she worked less than forty hours in a week. Defendants refused to make any changes to their payment policies. Instead, Defendants began disciplining Ms. Bryant for false and/or fabricated reasons.

As a result of Defendants' conduct towards Ms. Bryant, she suffered from severe anxiety. She suffered from depression, anxiety, panic attacks, loss of sleep, nightmares, and cold symptoms. She began seeing a psychiatrist and therapist and

taking medication for anxiety. She notified Ms. Perez of her anxiety and that she was taking medication. Ms. Perez responded, "everyone here is always stressed out." Because of her anxiety, Ms. Bryant missed multiple days of work in January and February. She produced doctor's notes excusing her absences. Ms. Bryant received a note on or about February 18, 2016 excusing her from work through February 23, 2016. She also received a note on or about February 23, 2016 excusing her from work until cleared by her therapist due to anxiety caused by stress at work.

On or about February 18, 2016, Ms. Bryant sent an email to Mr. Saha and Ms. Perez once again raising issues regarding her pay. She raised issues regarding the deduction of hours from her pay despite being a salaried employee and having some of her pay reported on a 1099 without notice or authorization. She also gave further notice of the physical illness being caused by stress from the job. At no point did Defendants advise Ms. Bryant of her rights under the FMLA even though she qualified for FMLA leave.

On or about February 23, 2016, Defendants terminated Ms. Bryant's employment because she raised concerns regarding her pay under the FLSA, because she reported a work related injury, and because she had taken medical leave covered by the FMLA. Defendants also refused to pay Ms. Bryant for her last two weeks of work and denied her coverage for health insurance even though pay for it was deducted from her pay.

Ms. Bryant seeks all available remedies under the FLSA for being terminated in retaliation for exercising her rights under the Act, the FMLA for interference and retaliation, the WDCA for retaliation, and the WFBA for being denied wages and fringe benefits.

## **PARTIES**

1.     Plaintiff Krystal Bryant is a resident of Garden City, Michigan, who was employed by Defendants as a Quality Assistant Nurse, Director of Nursing, and Director of Clinical Operations from December 2013 until February 23, 2016.

2.     Defendant Omni Healthcare Management Corp. is a company with its principal place of business in Farmington Hills, Michigan.

3.     Defendant Omni Home Care, Inc. is a company with its principal place of business in Farmington Hills, Michigan.

4.     Defendant Omni Home Care of Ohio, Inc. is a company with its principal place of business in Farmington Hills, Michigan.

5.     Defendants Omni Healthcare management Corp., Omni Home Care, Inc., Omni Home Care of Ohio, Inc. are collectively referred to herein as "Omni." Omni were joint employers of Plaintiff because they maintained sufficient control over the essential terms and conditions of her employment, including but not limited to having a common Human Resources Department, employment policies, and management structure.

6.     Defendant Swarup Saha is a resident of Novi, Michigan and, upon information and belief, the owner and President of Omni. At all relevant times Mr. Saha exercised control over Omni's operations and possessed the power to hire and fire employees, determine employee Work terms and conditions, control the corporation's financial affairs and compensation practices, and control significant aspects of the corporation's day-to-day functions.

7.     Defendant Reshmi Saha is a resident of Novi, Michigan and, upon information and belief, a co-owner of Omni. At all relevant times Mr. Saha exercised control over Omni's operations and possessed the power to hire and fire employees, determine employee Work terms and conditions, control the corporation's financial affairs and compensation practices, and control significant aspects of the corporation's day-to-day functions.

## JURISDICTION AND VENUE

8.     This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff brings her claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., and the Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq.*

9.     The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The pendant claims are part of the same case or

controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

10.     Venue is proper in this Court because Omni obligated itself to Plaintiff within Michigan, and Omni's headquarters is located within the Eastern District of Michigan, Plaintiff resides within the Eastern District of Michigan, and, upon information and belief, Defendant Saha resides within the Eastern District of Michigan.

## STATEMENT OF FACTS

11.     Omni is a Medicare certified home health agency that provides a wide range of nursing care and therapy solutions, with services available year-round including holidays.

12.     To provide those services, Defendants employ nurses and administrative staff who are paid on an hourly basis ("Hourly Workers").

13.     Defendants also employ managerial workers who are paid on a salary basis ("Salaried Workers").

14.     Defendants have a policy of tracking the time of all of its employees.

15.     This includes requiring employees to track their breaks.

16.     Most of Defendants' employees work through their lunch breaks.

17.     Nonetheless Defendants' policy is to *always* deduct thirty minutes from *all* employees' pay per day regardless of whether employees actually clocked in and

7

out for lunch or whether employees actually were given a full thirty minute period in which they performed no work.

18.     Defendants also have a policy of combining breaks that last under thirty minutes to total thirty or more minutes in order to characterize these breaks as unpaid "lunch breaks."

19.     Furthermore, Defendants have a policy for not paying for *any* work in excess of forty hours in any work week unless the time is pre-approved by Defendants.

20.     For Salaried Workers, these same policies are used to determine the actual number of hours worked. If the actual number of hours worked are less than 40 in any given week, Salaried Workers have their weekly wages reduced based on an effective hourly rate determined by dividing their normal salaried weekly rate by forty hours.

21.     Defendants had a policy of requiring Salaried Workers to work at least forty hours per week, but sometimes, Salaried Workers did not work at least forty hours in a week.

22.     Salaried Workers were not paid additional monies on top of their normal salaried weekly rate if they worked in excess of forty hours in any given week.

23.     Plaintiff notified Defendants that these policies violate the Fair Labor Standards Act, but Defendants did not modify *any* of these policies.

24.     Plaintiff Krystal Bryant began working at Omni in in or about December 2013 as a Quality Assurance Nurse.

25.     For this work, Ms. Bryant received a salary.

26.     In or about June 2014, Ms. Bryant left Omni as a full-time employee but began doing work as an independent contractor and was paid on a piece-meal basis.

27.     In or about May 2015, Ms. Bryant was re-hired as an employee by Omni as a Quality Assurance Nurse. She was paid a salary for that work.

28.     Upon her re-hire, Ms. Bryant continued doing the work she had performed as an independent contractor from home outside of her normal work hours. Defendants continued paying Ms. Bryant a piece-meal rate for this work but began reporting Ms. Bryant's wages on a W-2 instead of a 1099.

29.     In or about October 2015, Ms. Bryant was promoted to the Director of Nursing and Director of Clinical Operations.

30.     She continued receiving a salary and managed work for all of Omni.

31.     Ms. Bryant was not properly paid for her time. Any time Ms. Bryant worked less than forty hours in a week, she received less than her weekly wage.

32.     Ms. Bryant typically worked eight-and-a-half hours per day, five days a week. She would always work through her lunch break, but the time was deducted from her hours worked anyway. She never received overtime pay.

33.     Ms. Bryant received two pay checks: one for her salaried work and one for her piece-meal work, both reported on a W-2 and paid through payroll.

34.     In or about January 2016, Defendants unilaterally began classifying Ms. Bryant as an independent contractor for her piece-meal work from home, reporting the income on a 1099.

35.     Ms. Bryant immediately contacted Swarup Saha, owner and President of Omni. She also notified Defendants' Administrative Director of Operations, Heather Perez. She objected to being classified as an independent contractor, and at the same time, she also raised concerns about not being paid her full salary whenever she worked less than forty hours in a week.

36.     Ms. Bryant raised the issues regarding her pay to Mr. Saha and Ms. Perez multiple times.

37.     Defendants refused to make any changes to their payment policies. Instead, Defendants began disciplining Ms. Bryant for false and/or fabricated reasons.

38.     Defendants accused Ms. Bryant of using her cell phone for personal use when she was using it for business purposes as Defendants did not provide Ms. Bryant with a phone to perform her work.

39.     Defendants also required Ms. Bryant to record all of the duties she performed every day when nobody else was required to do this, and Defendants had cameras in Ms. Bryant's work space that would have allowed them to determine whether Ms. Bryant was performing her work.

40.     As a result of Defendants' conduct towards Ms. Bryant, she suffered from severe anxiety.

41.     She suffered from depression, anxiety, panic attacks, loss of sleep, nightmares, and cold symptoms.

42.     She began seeing a psychiatrist and therapist and taking medication for anxiety.

43.     She notified Ms. Perez of her anxiety and that she was taking medication. Ms. Perez responded, "everyone here is always stressed out."

44.     Because of her anxiety, Ms. Bryant missed multiple days of work in January and February. She produced doctor's notes excusing her absences. Ms. Bryant received a doctor's note on or about February 18, 2016 excusing her from work through February 23, 2016. She also received a doctor's note on or about

February 23, 2016 excusing her from work until cleared by her therapist due to anxiety caused by stress at work.

45.     On or about February 18, 2016, Ms. Bryant sent an email to Mr. Saha and Ms. Perez once again raising issues regarding her pay. She raised issues regarding the deduction of hours from her pay despite being a salaried employee and having some of her pay reported on a 1099 without notice or authorization. She also gave further notice of the physical illness being caused by stress from the job.

46.     At no point did Defendants advise Ms. Bryant of her rights under the FMLA even though she qualified for FMLA leave.

47.     On or about February 23, 2016, while Ms. Bryant was out on medical leave, Defendants terminated her employment because she raised concerns regarding her pay under the FLSA, because she reported a work related injury, and because she had taken medical leave covered by the FMLA.

48.     Ms. Bryant was not paid for her last two weeks of work at Omni.

49.     Defendants also denied Ms. Bryant health insurance benefits even though the cost of the health insurance was deducted from her pay. As a result, Ms. Bryant has outstanding medical bills that should have been covered by her health insurance but were not.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### Retaliation

50.    Plaintiff incorporates by reference all preceding paragraphs.

51.    Section 215(a)(3) of the Fair Labor Standards Act (FLSA) provides that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act . . . ." 29 U.S.C. § 215(a)(3).

52.    Plaintiff engaged in protected activity by asserting her rights under the Act on numerous occasions to her supervisors and Human Resources.

53.    Defendants knew about Plaintiff exercising her rights based on several verbal conversations with Plaintiff and email and other correspondence that were exchanged by the parties to that effect.

54.    Defendants terminated Plaintiff shortly after Plaintiff's protected activity.

WHEREFORE, Plaintiff is entitled to compensatory damages including; back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits, pain and suffering and other emotional damages, punitive damages, interest, attorney's fees, costs, and all other such relief this Court deems just and equitable.

## COUNT II
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### Interference

55.     Plaintiff incorporates here all previously stated allegations.

56.     Ms. Bryant was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(a):

    a.  Ms. Bryant worked for Omni for more than one year; and

    b.  Ms. Bryant worked in excess 1,250 hours for the proceeding 12 month period at all relevant times.

57.     Defendants are an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(a), as an entity engaged in commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

58.     Ms. Bryant was entitled to leave as an eligible employee who had a serious health condition that made her unable to perform the functions of her position.

59.     Ms. Bryant had a serious health condition as defined by federal regulations to the FMLA, 29 C.F.R. § 825.115(a):

    a.  She suffered a period of incapacity of more than three consecutive, full calendar days; and

    b.  She had subsequent periods of incapacity relating to the same condition that also involved two or more times of in-person treatment within thirty days of incapacity or treatment by a health care provider in-person resulting in a regimen of continued treatment.

60.    Ms. Bryant's condition caused incapacity in that she was medically unable to perform her work.

61.    Ms. Bryant received medical treatment in the form of prescription medication for his condition.

62.    Under regulations regarding the FMLA:

> When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. . . . Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. . . . All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period.

*Id.* at § 825.300(b)(1). This eligibility notice must include a statement of whether the employee is eligible for the FMLA, and if the employer states that the employee is not eligible FMLA leave, it must provide at least one reason why. *Id.* at § 825.300(b)(2).

15

63.     Defendants never provided any eligibility notice to Ms. Bryant as required by regulations to the FMLA.

64.     Defendants were aware of their duties under the FMLA but willfully violated the FMLA.

65.     Defendants' failure to follow the notice requirements set forth in the federal regulations constituted an interference with, restraint, or denial of the exercise of Ms. Bryant's FMLA rights.

66.     Had Ms. Bryant received notice of her rights under the FMLA, she would have applied and qualified for leave under the Act.

67.     Instead, Defendants fired Ms. Bryant after she followed her doctor's orders and took medical leave.

68.     As such, Omni prejudiced Ms. Bryant by not giving her the required FMLA eligibility notice or her statutory leave.

69.     Defendants' actions interfered with Ms. Bryant's right to FMLA leave as prohibited by the FMLA. 29 U.S.C. § 2615(a)(1).

WHEREFORE, Plaintiff is entitled to compensatory damages including; back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits, pain and suffering and other emotional damages, punitive damages, interest, attorney's fees, costs, and all other such relief this Court deems just and equitable.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### Retaliation

70.     Plaintiff incorporates here all previously stated allegations.

71.     As stated in Count II, Ms. Bryant qualified for leave under the FMLA.

72.     Ms. Bryant requested medical leave multiple times as required by her doctors for an extended leave and provided medical documentation stating the restriction to Defendants as soon as practicable.

73.     Instead of granting Ms. Bryant leave under the FMLA, Defendants retaliated against Ms. Bryant for taking protected medical leave when she refused to work in violation of her doctor's orders.

74.     Terminating Ms. Bryant for taking protected medical leave was retaliatory and a violation of the FMLA. 29 U.S.C. § 2615(a)(2).

WHEREFORE, Plaintiff is entitled to compensatory damages including; back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits, pain and suffering and other emotional damages, punitive damages, interest, attorney's fees, costs, and all other such relief this Court deems just and equitable.

17

## COUNT IV
## VIOLATION OF THE MICHIGAN WORKERS' DISABILITY COMPENSATION ACT
## <u>Retaliation</u>

75.    Plaintiff incorporates here all previously stated allegations.

76.    Ms. Bryant asserted her rights under the Workers' Disability Compensation Act regarding her on-the-job injury.

77.    The Michigan Worker's Disability Compensation Act ("WDCA") states that:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

MCL § 418.301(13).

78.    When Ms. Bryant notified Defendants of her work-related injury, she was terminated.

79.    Ms. Bryant subsequently applied or worker's compensation, and Defendants denied her benefits.

80.    Consequently, Defendants retaliated against Ms. Bryant for seeking compensation for injuries incurred while on the job by terminating her employment.

WHEREFORE, Plaintiff is entitled to compensatory damages including: back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering,

harm to reputation, exemplary damages, interest, costs, attorney fees, and any other such relief that this Court deems just and equitable.

**COUNT V**
**VIOLATION OF THE MICHIGAN WAGE AND FRINGE BENEFIT ACT**

81.    Plaintiff incorporates here all previously stated allegations.

82.    Ms. Bryant was an employee as defined by the Michigan Wage and Fringe Benefits Act ("WFBA"), MCL § 408.471(c).

83.    Defendants are employers as defined by the WFBA, MCL § 408.471(d).

84.    In violation of the WFBA, MCL § 408.474, Defendants failed to issue Ms. Bryant her final paycheck.

85.    In violation of the WFBA, MCL § 408.474, Defendants failed to pay Ms. Bryant her fringe benefit of health insurance by denying her the benefit.

86.    By withholding Ms. Bryant's health insurance, Ms. Bryant has incurred medical expenses that should have been covered by her health insurance.

WHEREFORE, Plaintiff is entitled to back wages, fringe benefits due (including a reimbursement of medical expenses incurred), a penalty at the rate of 10% annually on the wages and fringe benefits due, exemplary damages, a $1,000 civil penalty, interest, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT VI
## BREACH OF CONTRACT

87.   Plaintiff incorporates here all previously stated allegations.

88.   Defendants and Ms. Bryant agreed that she would be paid on a piece-meal basis for worked performed from home.

89.   This agreement formed an employment contract between Ms. Bryant and Defendants.

90.   Ms. Bryant performed under the employment contract by performing services during the course of her employment with Defendants.

91.   Defendants breached the terms and conditions of the employment contract by failing to pay Ms. Bryant the contracted wage for services provided by failing to pay her for her last two weeks of work.

WHEREFORE, Plaintiff is entitled to an award of damages, costs, attorney fees, prejudgment interest and other damages as allowed by law and equity.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, **KRYSTAL BRYANT**, requests that this Court enter the following relief:

a.  back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits;

b.  compensatory damages and exemplary damages, including pain and suffering and other emotional damages, and punitive damages;

c. payment of wages and fringe benefits, including a reimbursement of medical expenses incurred, a penalty at the rate of 10% annually on the wages and fringe benefits due, exemplary damages, and a $1,000 civil penalty;

d. an injunction prohibiting Defendants from further violations of the law as described here;

e. post-judgment assignment of attorney's fees, costs, and interest; and

f. any other relief to which Plaintiff may be entitled.

<div style="margin-left:40%">

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By:  /s/Richard G. Mack, Jr.
     Richard G. Mack Jr. (P58657)
     Adam M. Taub (P78334)
     *Attorneys for Plaintiff*
     600 W. Lafayette Blvd., 4th Floor
     Detroit, MI  48226
     (313) 964-4454 Phone
     (313) 964-4490 Fax
     richardmack@millercohen.com
     adamtaub@millercohen.com

</div>

Dated: July 14, 2016

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KRYSTAL BRYANT**,                                                          Case No.
                                                                            Hon.
                    Plaintiff,

v

**OMNI HEALTHCARE MANAGEMENT CORP.**,
**OMNI HOME CARE, INC.**,
**OMNI HOME CARE OF OHIO, INC.**,
**SWARUP SAHA**, and **RESHMI SAHA**,
Jointly and Severally,

                    Defendants.

---

**MILLER COHEN, P.L.C.**
Richard G. Mack Jr. (P58657)
Adam M. Taub (P78334)
*Attorneys for Plaintiff*
600 W. Lafayette Blvd., 4th Floor
Detroit, MI  48226-0840
(313) 964-4454

---

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, **KRYSTAL BRYANT**, by and through her

attorneys, **MILLER COHEN, P.L.C.**, and hereby demands for a trial by jury, for all

issues so triable.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By:   /s/Richard G. Mack, Jr.
       Richard G. Mack Jr. (P58657)
       Adam M. Taub (P78334)
       *Attorneys for Plaintiff*
       600 W. Lafayette Blvd., 4th Floor
       Detroit, MI  48226
       (313) 964-4454 Phone
       (313) 964-4490 Fax
       richardmack@millercohen.com
       adamtaub@millercohen.com

Dated: July 14, 2016

2